UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

REGIS COTTON, individually and on
behalf of all persons similarly situated,

               Plaintiff,

               -v-               6:25-CV-71 (DNH/ML)

CHARLES T. SITRIN HEALTH
CARE CENTER, INC.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:               OF COUNSEL:

BERGER MONTAGUE PC      MARIYAM HUSSAIN, ESQ.
Attorneys for Plaintiff
110 N. Wacker Drive, Suite 2500
Chicago, IL 60606

GOLDBERG SEGALLA LLP     CHRISTOPHER P.
Attorneys for Defendant         MAUGANS, ESQ.
665 Main Street
Buffalo, New York 14203

DAVID N. HURD
United States District Judge

## DECISION & ORDER

## I.    INTRODUCTION

On January 15, 2025, plaintiff Regis Cotton ("plaintiff"), a part-time re-

ceptionist and health care aide, filed this putative class and collective action

against her former employer, defendant Charles T. Sitrin Health Care Center ("defendant"), a health care and rehabilitation facility, alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). Plaintiff's Second Amended Complaint asserts claims for unpaid overtime under the FLSA and NYLL, inaccurate wage statements under NYLL § 195, and unpaid sick-leave wages under NYLL § 196-b. Dkt. No. 26.

On October 31, 2025, defendant moved to dismiss several of plaintiff's state-law claims (under Rule 12(b)(6)) and to strike or narrow the operative pleading's class allegations (under Rule 12(f)).[1] Dkt. No. 37. The motion has been fully briefed, Dkt. Nos. 39, 40, and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The following factual allegations are taken from plaintiff's Second Amended Complaint and will be assumed true for the purpose of assessing defendant's motion to dismiss. Dkt. No. 26 ("Second Am. Compl.").

---

[1] Defendant also moved to stay discovery pending resolution of this motion. Dkt. No. 37. Although a motion to dismiss does not automatically stay discovery, a court may in its discretion issue a stay. *See, e.g.*, *Khan v. New York City*, 757 F. Supp. 3d 327, 334 (E.D.N.Y. 2024). Defendant should note that this district's general division of labor leaves discovery-related requests up to the assigned magistrate judge, who would have acted on the stay request had it been directed to him (as opposed to being included as part of this dispositive motion briefing, which was directed to the district judge). In fact, although the Court cannot be certain on the basis of the record, it appears from the docket sheet that this issue was already covered by Judge Lovric at a hearing with the parties in advance of this motion practice. *See* Dkt. No. 34 (adjourning Rule 16 conference *sine die*). In any event, defendant's request to stay discovery will be denied as moot because this opinion resolves the motion to dismiss.

Defendant operates a health-care facility in New Hartford, New York that provides medical rehabilitation, assisted living, and long-term residential care services to the elderly and individuals with disabilities. Second Am. Compl. ¶ 1. Defendant employed plaintiff from October 2018 through July 2023. *Id.* ¶¶ 7, 26. During that time, plaintiff worked as a receptionist and, beginning in approximately August 2021, also worked as a Companion Care Aide. *Id.* ¶¶ 26, 29–30.

Plaintiff alleges that defendant classified her as a "non-exempt hourly employee" and compensated her at different hourly rates depending on her position. Second Am. Compl. ¶¶ 27, 29–30. According to plaintiff, she regularly worked more than forty hours per week but was not paid overtime premiums required by federal and state law. *Id.* ¶¶ 31–45. Instead, plaintiff alleges that defendant compensated her overtime hours at straight-time rates and misidentified those payments as "Retro Pay" or "Retro Dollars" on her wage statements as part of a "straight-time-for-overtime pay scheme." *Id.* ¶¶ 28, 36–43.

Plaintiff further alleges that this practice was not limited to her own employment but was part of a broadly applicable compensation policy affecting other similarly situated employees. Second Am. Compl. ¶¶ 34, 38, 43–45. According to the operative complaint, defendant employed hundreds of workers, and plaintiff observed that other employees—including "those who only worked in one position and/or received one rate of pay"—routinely worked more

- 3 -

than forty hours per week and received the same allegedly improper compensation. *Id.* ¶¶ 25, 32, 43.

For instance, plaintiff alleges that during the workweek spanning March 26 through April 1, 2023, she worked 51.82 hours as a Companion Care Aide, including 11.82 overtime hours, but was paid her regular hourly rate rather than an overtime premium, resulting in an alleged underpayment of $143.42. Second Am. Compl. ¶ 40.[2]  Plaintiff further alleges that, during the week of June 4 through June 10, 2023, she worked 47.18 hours, including 7.18 overtime hours, but again received only straight-time pay for those overtime hours, resulting in an alleged underpayment of $82.28. *Id.* ¶ 41.  According to plaintiff, when she raised concerns about these practices with management, she was informed that she would not receive time-and-one-half overtime pay because her hourly rate as a Companion Care Aide exceeded her hourly rate as a receptionist. *Id.* ¶ 42.

Plaintiff further alleges that defendant failed to pay employees who worked at multiple rates of pay the proper rate for paid sick leave. Second Am. Compl. ¶¶ 46–50.  Specifically, plaintiff contends that, instead of "paying [p]laintiff her regular rate when she took sick leave, [d]efendant instead paid [p]laintiff her lowest hourly rate." *Id.* ¶ 47.  By way of example, plaintiff alleges

---

[2] The Second Amended Complaint describes this period as spanning March 26, 2023, to April 1, 2024. Second Am. Compl. ¶ 40.  Read in context, however, the Court treats this as a scrivener's error and understands plaintiff to mean the period from March 26, 2023, to April 1, 2023.

that during a pay period in which she worked both as a Companion Care Aide and a receptionist, defendant paid out six hours of sick leave at her lower receptionist rate rather than at the higher rate allegedly required by law. *Id.* ¶ 48. Plaintiff also alleges that defendant furnished inaccurate wage statements because those statements failed to accurately reflect the wages owed to employees, making it difficult for employees to identify and challenge the alleged pay deficiencies. *Id.* ¶¶ 49–50.

The Second Amended Complaint defines the proposed collective and classes as follows:

> All non-exempt hourly employees who work for Defendant between January 15, 2022, and the present in the United States, and who were not paid proper overtime compensation when they worked over forty (40) hours in a workweek (the "FLSA Collective").

> All non-exempt hourly employees who worked for Defendant from January 15, 2019, and the present in the [state of] New York, and who were not paid proper overtime compensation when they worked over forty (40) hours in a workweek (the "Overtime Class").

> All employees who worked for Defendant between January 1, 2021, and the present and who received two or more rates of pay and used sick time on at least one occasion (the "Sick Time Class").

Second Am. Compl. ¶¶ 17–19.

## III.   <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure permit a party to move to dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To assess this facial plausibility requirement, the court "must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and draw all reasonable inferences in favor of the

plaintiff, *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). In doing so, the court generally confines itself to the facts alleged in the pleading, documents attached to the complaint or incorporated into it by reference, and matters of which judicial notice may be taken. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.   DISCUSSION

### A.  Motion to Strike

First, defendant has moved to strike or narrow plaintiff's proposed collective and class definitions. Dkt. No. 37-7 at 9–16. According to defendant, the proposed collective and class definitions are impermissibly overbroad because the operative complaint fails to allege a plausible factual basis for including non-exempt employees who worked only a single position. *See id.* In opposition, plaintiff argues that the Second Amended Complaint plausibly alleges a company-wide overtime policy that applied to her and to other, similarly situated workers. Dkt. No. 39 at 12–15.

Federal courts possess discretion under Rule 12(f) to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[m]otions to strike under Rule 12(f) are rarely successful." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 511 (S.D.N.Y. 2015) (citing *Belfiore v. Procter & Gamble Co.*, 94 F. Supp. 3d 440, 447 (E.D.N.Y. 2015)). "This is particularly true in the context of

motions to strike class allegations where, as here, no discovery has taken place." *Jaffery v. Health Ins. Plan of Greater N.Y.*, 2024 WL 4223740, at \*4 (N.D.N.Y. Sept. 18, 2024) (Sannes, C.J.).

Measured against this general legal standard, defendant's argument will be rejected. Defendant has not shown that this is one of the rare cases in which striking or narrowing class allegations at the pre-answer or pleadings stage is appropriate. Although defendant characterizes plaintiff's alleged injury as arising solely from her employment in two positions at different hourly rates, the Second Amended Complaint alleges a broader overtime policy applicable to non-exempt hourly employees generally.

Plaintiff alleges that she and other employees—including employees who worked only a single position—worked more than forty hours per week but were not properly compensated for overtime; that defendant employed a "widely applicable" pay practice of denying overtime compensation; that plaintiff observed another employee who worked only as a Certified Nursing Assistant receive "Retro Pay" in lieu of overtime compensation; and that defendant failed to pay plaintiff proper overtime "regardless of whether she worked in both or only one of her jobs." Second Am. Compl. ¶¶ 34, 38–39, 48–49. The operative complaint also includes a representative workweek during which plaintiff worked exclusively as a Companion Care Aide, yet allegedly received

straight-time compensation rather than the required overtime premium. *Id.* ¶ 40.

Accepted as true, these and the other, related allegations in the Second Amended Complaint are sufficient to plausibly allege an overtime policy extending beyond employees who worked multiple positions. Defendant's arguments go not to the sufficiency of the pleadings, but to the truth of plaintiff's allegations and whether discovery will ultimately demonstrate that employees who worked only a single position are similarly situated to plaintiff.

Those are questions more appropriately addressed after the parties have developed an evidentiary record. *See In re Libor-Based Fin. Instruments Antitrust Litig.*, 2016 WL 2851333, at *1 (S.D.N.Y. May 13, 2016) ("A court will deny a motion to strike as premature unless the defendants demonstrate from the face of the complaint that it would be impossible to certify the alleged class regardless of the facts [plaintiff] may be able to obtain during discovery.") (internal quotation marks omitted).

Indeed, "district courts in this Circuit have frequently found that a determination of whether the Rule 23 requirements are met is more properly deferred to the class certification stage, when a more complete factual record can aid the Court in making this determination." *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) (citations omitted); *see also Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462–63 (S.D.N.Y. 2013); *Chen–Oster v.*

*Goldman, Sachs & Co.,* 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012).[3]  Accordingly, defendant's motion to strike or narrow plaintiff's proposed collective and class definitions will be denied.

### B.    Motion to Dismiss

Second, defendant has moved to dismiss plaintiff's NYLL §§ 196-b and 195(3) claims.  Dkt. No. 37-7 at 16–26.  Defendant argues that: (1) plaintiff's NYLL § 196-b claim must be dismissed because the statute does not provide an express private right of action; and (2) plaintiff lacks Article III standing to pursue her NYLL § 195(3) claim.  *See id.*

In opposition, plaintiff argues that: (1) a sister provision of the NYLL expressly authorizes a NYLL § 196-b claim for unpaid sick leave; and (2) she has plausibly alleged standing to pursue a claim under NYLL § 195(3) because the allegedly inaccurate wage statements hindered her ability to identify and timely recover unpaid overtime compensation.  Dkt. No. 39 at 18–26, 26–30.

### 1.    NYLL § 196-b

Plaintiff's Second Amended Complaint alleges that she did not receive paid sick leave as required by NYLL § 196-b.  Second Am. Compl. at ¶¶ 87–94.

---

[3] An exception to this general rule applies when a motion to strike "addresses issues 'separate and apart from the issues that will be decided on a class certification motion.'"  *Chen–Oster*, 877 F. Supp. 2d at 117 (quoting *Rahman v. Smith & Wollensky Rest. Group, Inc.*, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)).  The exception is inapplicable here.

Defendant argues that this claim must be dismissed because this provision of state law does not provide a private right of action. Dkt. No. 37-7 at 16–21. According to defendant, this claim is impermissibly premised on guidance issued by the New York State Department of Labor, rather than any statutory or regulatory requirement, and that the allegations are otherwise too vague and speculative to state a plausible claim for relief. *Id.*

Plaintiff responds that NYLL § 198(1-a) authorizes employees to recover wages that were unlawfully withheld under Article 6 of the Labor Law, including paid sick leave required by a related statutory provision, *e.g.*, NYLL § 196-b, and that the Second Amended Complaint plausibly alleges a violation under this body of law. Dkt. No. 39 at 18–26.

Upon review, plaintiff has plausibly alleged that the compensation at issue under NYLL § 196-b is recoverable under NYLL § 198(1-a). "Courts have treated [§] 198(1-a) as providing an express cause of action for 'wage claims' under Article 6." *Toxqui v. R&P Pizza Corp.*, 2025 WL 2430569, at *12 (S.D.N.Y. Aug. 22, 2025).

Article 6 defines "wages" as "the earnings of an employee for labor or services rendered." N.Y. Lab. Law § 190(1). Section 196-b, in turn, requires covered employers to provide eligible employees with paid sick leave and specifies that such leave "shall be compensated at the employee's regular rate of

pay, or the applicable minimum wage established pursuant to article nineteen of this chapter, whichever is greater." N.Y. Lab. Law § 196-b(2).

In other words, where an employee has alleged that an employer failed to compensate sick leave at the rate required by § 196-b, the employee has alleged a "wage claim" under Article 6, *i.e.*, the underpayment of compensation that an employer is required to pay. That "wage claim" can be pursued under NYLL § 198(1-a).

This reading is consistent with the statutory framework. Section 196-b establishes an employer's substantive obligation to provide paid sick leave and to compensate such leave at a specified rate, while § 198(1-a) provides employees with an express mechanism to recover compensation allegedly withheld in violation of Article 6. Nothing in the text of § 196-b indicates that the legislature intended to displace or limit the remedies otherwise available under § 198.

In arguing otherwise, defendant relies heavily on *Konkur v. Utica Academy of Science Charter School*, 38 N.Y.3d 38 (2022), a recent decision in which the New York Court of Appeals declined to recognize an implied private right of action for wage-kickback claims under a specific subsection of the statute: NYLL § 198-b. 38 N.Y.3d at 40–45.

But *Konkur* does not foreclose plaintiff's claim. In *Konkur*, the appellate court held that NYLL § 198-b does not contain an implied private right of action. However, *Konkur* recognized that § 198-b's anti-kickback provision

remains distinguishable from "wage claims" based on a violation of a substantive provision of Article 6.  38 N.Y.3d at 44.  And *Konkur*'s reasoning certainly does not suggest that *every* substantive obligation enacted within Article 6 must independently contain an express private right of action before an employee may invoke § 198.

In any event, plaintiff does not seek to imply a cause of action directly from § 196-b.  Instead, she alleges that defendant failed to provide paid sick leave required by Article 6 and invokes NYLL § 198, which courts have held authorizes employees to bring civil actions to recover underpayments of wages required by Article 6.  Construing the statutes together gives effect to both provisions.

Defendant's remaining arguments are meritless.  Although defendant contends that plaintiff improperly relies on guidance issued by the New York State Department of Labor, plaintiff's claim arises from the requirements imposed by § 196-b itself, not from the Department's guidance.

The guidance may inform plaintiff's interpretation of the statute, but it does not create the statutory obligation.  Whether defendant's method of calculating paid sick leave ultimately complies with § 196-b presents a merits question that cannot be resolved on a motion to dismiss.

At this stage, the Court need not decide whether plaintiff will ultimately be able to establish that defendant's sick leave policy violated § 196-b or that

the compensation allegedly withheld from her qualifies as recoverable damages under § 198. It is sufficient that the Second Amended Complaint plausibly alleges that defendant failed to pay plaintiff sick leave compensation required by Article 6. Accordingly, because plaintiff plausibly alleges that defendant failed to provide compensation required by Article 6 and seeks relief pursuant to § 198's express remedial provisions, defendant's motion to dismiss this claim will be denied.

### 2.    <u>NYLL § 195(3)</u>

Defendant goes on to argue that plaintiff lacks Article III standing to assert a claim under NYLL § 195(3) because she "make[s] allegations that fail[ ] to establish standing and simply copie[s] language found in the statute." Dkt. No. 37-7 at 21. In opposition, plaintiff argues that she has plausibly alleged standing because defendant's inaccurate wage statements hindered her ability to timely identify the overtime wages she was owed and, as a result, delayed her receipt of those wages. Dkt. No. 39 at 26.

Article III standing is a constitutional requirement to be heard in federal court. To have standing at the pleadings stage, the plaintiff must plausibly allege that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

With respect to NYLL § 195(3) claims, district courts within the Second Circuit have held that "a plaintiff has standing if he plausibly alleges that, by failing to provide the required wage statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages.'" *Johnson v. Best Bev LLC*, 2025 WL 2734204, at *6 (N.D.N.Y., 2025) (Brindisi, J.) (quoting *Freeland v. Findlay's Tall Timbers Dist. Ctr., LLC*, 2024 WL 4652251, at *2 (W.D.N.Y. Nov. 1, 2024)).  The Second Circuit has further clarified that to have standing for a wage statement claim, a plaintiff "must show some causal connection between the lack of accurate notices and the downstream harm." *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 308 (2d Cir. 2024).

Upon review, plaintiff has satisfied the Article III requirements to pursue her NYLL § 195(3) claim in federal court.  Plaintiff alleges that defendant issued wage statements that inaccurately characterized overtime compensation as "Retro Pay" and omitted the information required by § 195(3), including the applicable overtime rate and the amount of overtime compensation earned. Second Am. Compl. ¶¶ 36–37, 76–81.  Plaintiff also alleges that these inaccuracies prevented her from determining the overtime compensation she was owed and delayed her ability to seek payment of those wages.  *Id.* ¶ 50; *see also* Pl.'s Opp. at 26.

These allegations are sufficient to plead an injury for purposes of Article III. Unlike a plaintiff who alleges only a technical violation of § 195(3), plaintiff has alleged that the inaccurate wage statements concealed defendant's alleged overtime violations and thereby impeded her ability to discover and recover unpaid wages.

Those allegations plausibly establish that the statutory violation resulted in a concrete harm beyond the mere receipt of inaccurate wage statements. *See Freeland*, 2024 WL 4652251, at \*2 (quoting *Castillo v. Hollis Delicatessen Corp.*, 2024 WL 4107258, \*1 n.1 (E.D.N.Y. Sept. 6, 2024)) (noting that "district courts are in agreement that a plaintiff has standing if he plausibly alleges that, by failing to provide the required wage statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages.'") (collecting cases); *Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (finding plaintiff stated a NYLL claim where lack of wage statements prevented her from "ascertain[ing] the amounts she was supposed to be paid, the number of hours she worked during each pay period, and the amount(s) of any and all deductions . . . tak[en] from her pay"). Accordingly, defendant's motion to dismiss this claim will be denied.

## IV. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1. Defendant's motion to dismiss (Dkt. No. 37) the Second Amended Complaint and to strike plaintiff's class allegations is DENIED; and

2. Defendant shall answer the operative complaint within FOURTEEN DAYS of the date of this opinion.

The Clerk of the Court is directed to terminate the pending motion and set an answer deadline accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  August 5, 2026
        Utica, New York.